IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTINA DeLEON,

                    Plaintiff,


          vs.                                        Case No. 06-1098-JTM


THE CITY OF WICHITA, KANSAS,
BRIAN HURLEY,  JASON PFEIFER,
GARY HARDESTY,

                    Defendants.


MEMORANDUM AND ORDER

        This is an action by plaintiff Christine DeLeon alleging that three Wichita, Kansas police

officers violated her right to be free from the use of excessive force.  DeLeon has also sued the City

of Wichita, alleging a failure to train the officers.  The City and the individual officers have filed

motions for summary judgment which are now before the court.


**Findings of Fact**

        Summary judgment is proper where the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, show there is no genuine issue as to any

material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.

56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light

most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.

1988).  The party moving for summary judgment must demonstrate its entitlement to summary

judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.

1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual

allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

On the evening of April 13, 2005, Wichita Police Officers Brian Hurley, Jason Pfeifer and Gary Hardesty received a dispatch from Sedgwick County Emergency Communications, the dispatching authority for the Wichita Police Department, of a vehicle being driven erratically. The dispatch originated as a 911 call from a citizen who had followed the car. The officers were told by dispatch that the vehicle had hit a couple of curbs, was going into driveways and driving into oncoming traffic.

Shortly after receiving the dispatch, the officers found the vehicle stopped in a residential yard in the 2400 block of North Amidon. The car faced in a southeasterly direction and was on the east side of Amidon Street. The windows of the car were fogged, the engine was running and the lights were on. Hurley, Pfeifer and Hardesty approached the vehicle, but the doors were locked. DeLeon was at the wheel of the vehicle.

2

Officer Pfeifer knocked on the windows and tried to find a way into the car, Officer Hurley knocked on the driver's side window several times with his flashlight. The officers saw no response except for some movement of DeLeon's head. The officers saw that DeLeon's hands were on the steering wheel.

DeLeon then revved the car's motor and abruptly drove off across several lawns, over some landscaping material, and then struck a large, mature tree, uprooting it. The tree was bent over to about a 35- to 45-degree angle.

After the car drove from the yard, Hardesty ran to his patrol car because he believed that the driver was eluding the officers and he believed  he was going to have to pursue her in his patrol car. After DeLeon crashed into the tree, he ran to her car. Pfeifer and Hurley also ran after the car when it drove away.

When Officer Pfeifer was behind the plaintiff's car and saw the car hit the tree, he saw plaintiff smash into the steering wheel.  When they reached the vehicle, they saw DeLeon still grasping the steering wheel.

Hurley was the first officer to come into contact with the vehicle after it hit the tree. He tried to break the driver's side window with his baton but could not.  Officer Hardesty broke the driver's side window with his baton. Some of the window glass went inside the vehicle and some outside. He then reached through the  window, unlocked the door and opened it.

Three times Hardesty ordered DeLeon to leave her car. She did not comply.  The other officers were also giving her verbal commands such as to "put the car in park" and "open the door." She did not exit the vehicle and continued to hold the steering wheel. She did not have her seat belt on.  Officer Pfeifer approached the car on the passenger's side and broke the window with his baton.

When plaintiff did not get out of the car, Hardesty attempted to pull plaintiff out of the vehicle by her left wrist using his left arm. At the time, he had his flashlight and baton in his right hand. According to Hardesty, DeLeon pulled away from him, holding onto the steering wheel, and he lost his grip with his left hand. He threw the baton and flashlight toward the back of the car, out

of the way. He then reached in with both hands and pulled her from the car by her left arm, pulling her about five feet from her car.  He put one handcuff on her left wrist.

Hardesty and Pfeiffer have testified that they believed plaintiff needed to be removed from the vehicle to get the vehicle secured. They believed that pulling plaintiff from the vehicle in the manner that was done by Hardesty was an exigent circumstance.

When Hardesty had the one handcuff on her, plaintiff was on her stomach. Her shoulders were moving back and forth and she pulled her hands up underneath her and Hardesty told her three times to give him her hand which she did not do. Hardesty struck her one time in the common peroneal nerve on the outside of plaintiff's left leg with his fist. He has testified that he believed that a closed fist was necessary because he is not taught to strike with an open hand for a common peroneal strike. It was Hardesty's belief that he would have been justified either with a knee strike to the common peroneal or the closed fist in the common peroneal. He did not choose to use a pressure point technique to the neck, ear, nose or lower jaw because he did not want to lose control of the hand that he had handcuffed. Hardesty believed plaintiff exhibited resistance to being handcuffed, to avoid his gaining control.

Policies and practices and training of the Wichita Police Department permit use of empty hand techniques such as a strike to the common peroneal when suspects will not produce their hands for handcuffing. Officers are also aware that there is danger that a suspect will produce a weapon from a hand that is underneath a suspect's body. Officer Hardesty believed there was the possibility of plaintiff pulling a weapon from the hand that was underneath her. Officer Hardesty did not strike plaintiff DeLeon in the face.

It is uncontroverted that neither Officer Pfeifer nor Officer Hurley struck plaintiff.

When she still would not produce her hands, Hardesty and Hurley pulled her arm out from under her and placed her in handcuffs.

When he responded to the call, Officer Hardesty believed that when he pulled plaintiff from the vehicle he was dealing with a drunken driver. Nothing in his observations of plaintiff seemed

inconsistent to Officer Hurley than those of a drunk driver. However, after plaintiff was pulled from the vehicle, Officer Pfeifer saw candy and an insulin kit while doing a search of the vehicle. He informed the other officers that he believed the driver was having some type of diabetic attack. Up until he found the diabetes treatment kit in the car, Officer Pfeifer believed the officers were dealing with a driver that was impaired on alcohol or drugs or some other substance. Officer Pfeifer told Hardesty that he had found a diabetic kit and believed that the driver was possibly diabetic.

A local television news crew videotaped DeLeon's vehicle after it was stopped, and partially captured the officers' use of force to extract her from her vehicle and to get her handcuffed. Photographs of plaintiff's vehicle and the condition of the tree in the residential yard were photographed by the Wichita Police Department.

In responding to the motions for summary judgment of the defendants, counsel for DeLeon fail to comply with D.Kan.R. 56 requiring an enumeration of which facts of the movant are controverted and which are not. Instead, counsel submits a separate and independent narrative which fails to reference any particular fact statements of the defendants as admitted or denied.

The response states that alleges DeLeon was not feeling well and her blood sugar dropped, and does not remember anything about the incident. She also alleges that she did have the injuries present on the video and as shown from hospital records prior to the incident that is the subject of this litigation. Both of these asserted facts are presented wholly without any factual support. Accordingly, these assertions have no evidentiary weight and form no part of the court's decision.

For the remainder, up until the point where DeLeon was removed from the vehicle, the plaintiff cites various portions of the officer's deposition testimony, but these fail to create any material variance in the facts set forth above. For the period after DeLeon's removal, the plaintiff relies on the affidavit testimony of Aileen Vaughn, the owner of the house where DeLeon's vehicle

ultimately came to rest.  Vaughn observed the incident from her front doorway, which was about ten

feet from DeLeon's vehicle.[1]

By the time Vaughn observed the situation, the officers had already broken the car windows.

(Vaugh aff. at ¶ 12).  Vaughn saw one officer pull DeLeon from the vehicle, holding her by each

arm.  When she was pulled from the vehicle, DeLeon "was 'limp as a rag.'"[2]  She believed the

officer used more force than needed.  DeLeon did not speak, did not resist, or appear responsive at

all.

According to Vaughn, the officer dragged DeLeon to the concrete entryway to the house's

front porch.  Vaughn avers that she saw DeLeon's face from a distance of about five feet as she was

pulled from the car, and that it was not marked by any bruises, cuts, or injuries.  The officer knelt

on DeLeon's left side as she lay face down, handcuffed her left wrist, and began yelling for her to

produce her other arm, which was underneath her.  The officer then struck DeLeon with his closed

fist between the shoulder blades.  DeLeon groaned but did not say anything.  Giving the right arm

"a very strong yank or pull," the officer pulled the arm out and handcuffed it.  Vaughn later saw

blood on the concrete in the area where DeLeon face had been located.

Plaintiff claims that she sustained the following injuries from the incident: "I received

multiple injuries to my abdomen, sides, arms, neck, back, face, and legs. I had a large gash or cut and

bump on the left side of my forehead. I had glass fragments all over my face and in my head. I had

---

[1]The court accepts Vaughn's testimony as a fact witness only.  In the first paragraph of her affidavit, Vaughn states that she is "a registered nurse who worked in the psychiatric area of Wesley for ten years" and that she "know[s] when someone is out of it." (Affid. at ¶ 1).  As noted elsewhere in this opinion, plaintiff has designated no expert witnesses in the case, and there is nothing elsewhere in the affidavit which would suggest that Vaughn has the education and training to, at a glance, diagnose diabetic seizure, or to distinguish that condition from alcoholic intoxication.  Accordingly, both for a lack of foundation and the lack of compliance with court-mandated disclosure of expert testimony, the court will not accept evidence from Vaughn other than that of her personal observations.  The court also excludes various speculative and conclusory remarks made by Vaughn in her affidavit.

[2]The quotation marks appear thus in the affidavit.  It is not clear who the affidavit may be quoting, other than DeLeon, or if the author of the affidavit is attempting to give emphasis to these words rather than indicate an attributed quotation.

bruising around both of my eyes. I broke my right arm. There was bruising all over my body and my head." Plaintiff contends that all of the injuries she sustained that evening were from the actions of the police officers.

However, by her own account DeLeon has no memory of the incident and cannot therefore independently state whether the injuries cited were received as a consequence of officers' actions rather than her action in driving her car into a tree. The videotape shows DeLeon being pulled from the car and to the ground. The plaintiff is obscured when the officers place her in handcuffs, and accordingly the court cannot, on the basis of the videotape, resolve the fact dispute as to whether DeLeon was struck on the leg or thigh (the testimony of the officers) or between the shoulder blades (the affidavit by Vaughn). The videotape does not show any officer directly using any force which would be reasonably expected to break an arm. Since Vaughn avers that DeLeon's face was uninjured when she was pulled from the vehicle, the court can infer that the plaintiff received bruising and a cut on the forehead when she was placed into handcuffs.

According to the Scheduling Order in the case (Doc. # 6) plaintiff's deadline for the production of expert reports was November 3, 2006. Plaintiff has produced no expert opinion specifying which, if any, of Ms. DeLeon's injuries were due to the use of force by the defendant officers rather than from the vehicular accident.

Plaintiff's theory of recovery against defendant, City of Wichita, is that she was deprived of her Fourth Amendment rights as a result of the City of Wichita failing to train its officers and by having inadequate policies for the use of force.

The Kansas Law Enforcement Training Act (K.S.A. 2001 Supp. 74-5601, et. seq.) currently requires that every full-time law enforcement officer satisfactorily complete a course of not less than 560 hours of accredited instruction at the Kansas Law Enforcement Training Center (KLETC) or at a certified state or local law enforcement training school. Prior to September 2002, the requirement was 400 hours. K.S.A. 74-5607a. To be state certified, state or local training schools must satisfy

the qualifications and standards promulgated by the Director of KLETC after approval of the Kansas Commission on Peace Officers' Standards and Training (KCPOST).

Prior to and since the incident at issue on April 13, 2005, the City of Wichita has required each of its police recruits to successfully complete the training academy at the Wichita-Sedgwick County Law Enforcement Training Center, a joint operation of the Wichita Police Department and the Sedgwick County Sheriff's Office. This training center is certified by KLETC.

Hurley graduated from the training academy in 1990. Pfeifer graduated in 1997. Hardesty graduated in 1998. Their basic training consisted of an intensive 18-21 weeks of law enforcement instruction. Hurley received 720 hours of law enforcement training in the academy; Pfeifer received 808 hours, and Hardesty received 812 hours, all of which far exceeded the 400 hours required by state law prior to September of 2002. The current state requirement is 560 hours.

Officer Hardesty received 24 hours of training in detection and apprehension of impaired drivers of motor vehicles. The training would generally cover observing driving behavior and physical symptoms of drivers who were impaired in some manner, conducting sobriety tests and apprehension and arrest of suspects. Officer Pfeifer received 20 hours and Officer Hurley received 8 hours of similar academy training. Some of the other course training received at the academy may have touched on the detection and apprehension of impaired drivers. In particular, classes in interpersonal communication and conflict resolution would have involved dealing with impaired suspects.

Upon successful completion of the training academy, Hurley, Pfeifer and Hardesty received state certification as full-time law enforcement officers by KSCPOST. Following their graduation from the training academy and state certification, Hurley, Pfeifer and Hardesty received an additional 8-14 weeks of training with a field-training officer. To retain their certification as law enforcement officers, Hurley, Pfeifer and Hardesty were required under state law to complete 40 hours each year of continuing education. (Pretrial Order, Doc. # 24, p. 6).

DeLeon does not directly or substantially controvert any of the facts set forth in the City's brief.

**Conclusions of Law**

DeLeon has brought her claims under 42 U.S.C. § 1983, citing a violation of her rights under the Fourth and Fourteenth Amendments to the Constitution.  The defendants argue that pursuant to *Graham v. Connor*, 490 U.S. 388 (1989) and other authorities, DeLeon's claim of excessive force is governed solely by the Fourth Amendment.  DeLeon's response is completely silent on the issue, and argues that matter solely within the context of Fourth Amendment law.  *See* Dkt. No. 34. Accordingly, the court will treat the argument as admitted and examine DeLeon's claims within the context of the Fourth Amendment.

Applying that law, the court finds that the individual officers are entitled to qualified immunity on DeLeon's constitutional claims.  To defeat the officers' defense of qualified immunity, the plaintiff must show that the officers violated some constitutional right.  *Anderson v. Creighton*, 483 U.S. 635 (1987).  Law enforcement agents violate the Fourth Amendment's prohibition of excessive force when they exert force which is objectively unreasonable. *Graham v. Conner*, 490 U.S. 388, 394 (1989).

Here, the officers arriving at the scene were presented with a potentially intoxicated driver at the wheel of a car that had already driven through several yards and had crashed into a tree, and who appeared conscious but did not comply with orders to leave her vehicle.  The plaintiff has failed to present any admissible evidence which would show that the officers should have known (prior to the discovery of DeLeon's diabetic treatment kit) that she was suffering from a diabetic reaction rather than some other mental condition or inebriation.

Although the plaintiff complains, with respect to the City of Wichita, that the defendant should have given its officers more training in detecting diabetic conditions, the plaintiff has supplied no evidence at all that any such training would have resulted in any different treatment

accorded to the plaintiff.  There is no evidence that even fully trained officers should have been able to determine, at night and without any chance for prior conversation or examination of DeLeon, that she was suffering from a diabetic reaction rather than intoxication.  The plaintiff has supplied no evidence that, even allowing for the possibility that there might have been a relatively innocent explanation for the driver's condition, the officers were still not obliged to remediate the already dangerous situation by removing her from the vehicle and securing the situation as quickly as possible.

Accordingly, the plaintiff's argument, presented without evidence or authority, is that officers in this situation must assume the most innocuous of explanations for the manifestly dangerous actions of a vehicle operator.  This the court will not do.  The court finds the officers were entitled to remove DeLeon from her vehicle, and to use a reasonable amount of force to do so.

The court has little difficulty in determining that Officers Hurley and Pfeifer are entitled to summary judgment.  The plaintiff's argument with respect to these officers is that they failed to intervene to stop Officer Hardesty from allegedly assaulting her when she was removed from the vehicle and handcuffed.  However, a review of the videotape of the incident demonstrates the inadequacy of plaintiff's claims.  Although, as noted earlier, the view of the incident is partially obscured at the time DeLeon was actually handcuffed, the videotape amply demonstrates the extremely short duration of the incident.  This is not a case in which a citizen was subjected to a prolonged assault by an officer, while other officers neglected a realistic opportunity to intervene. Here, within a few seconds after she was pulled from the vehicle, DeLeon was placed on the ground and had been handcuffed. The incident was over so quickly that, even if Officer Hardesty did act illegally, the incident was over before either of the other officers had any effective chance to intervene.  *Cf. Miller v. Smith*, 220 F. 3d 491, 495 (7th Cir. 2000) (police officer only subject to liability for the acts of another officer if there was "a realistic opportunity to step forward and prevent a fellow officer from violating the plaintiff's rights through excessive force but failed to do so").

10

This leaves the conduct of Officer Hardesty in forcibly removing DeLeon from the vehicle, placing her on the ground, and forcibly handcuffing her.  There is no doubt that viewing the videotape in isolation is unpleasant:  a large officer forcibly pulls DeLeon from the vehicle and onto the ground, then strikes her as she lies there, and finally pulls her to her feet.  However, this must be coupled with the uncontroverted evidence which is not shown on the videotape.

At the time of the use of force, DeLeon had already been involved in a series of automobile accidents, driving across several lawns and finally hitting tree.  She remained behind the wheel of the car and refused the officer's orders to get out.  Indeed, far from being non-responsive to the officers' commands, it appeared to the officers that DeLeon was actively seeking to defy those orders and flee — in a seeming reaction to the officers' first attempt to speak to DeLeon, the plaintiff then revved the engine and drove away before ultimately coming to rest after striking a tree.  Even then, the car remained apparently operable and the officers could not but assume that DeLeon might attempt further dangerous flight.

Officers facing such a situation may use reasonable force in removing and restraining a non-responsive driver.  *See Latta v. Deryte*, 118 F.3d 693 (10th Cir. 1997).  Officer Hardesty was entitled to remove DeLeon from the vehicle, using the minimum force necessary.  Given the circumstances of the case, he was also entitled to restrain the plaintiff, again using the minimum reasonable force necessary to achieve this goal.  *Graham v. Conner*, 490 U.S. 386, 397 (1989). This was accomplished here rapidly and effectively.  The evidence fails to reveal any gratuitous or illegal use of force against the plaintiff.  When DeLeon appeared to resist the handcuffing, Hardesty delivered a single blow.  Whether delivered to her thigh or between the shoulder blades, the blow was consistent with police practice in attempting to restrain a recalcitrant (and potentially armed) subject.

And, again, the plaintiff has failed to present any expert evidence which would link any substantial injuries suffered by DeLeon to any of the actions taken by the officers.  Taking all of the circumstances of the case together, the court finds that the plaintiff has failed to demonstrate the existence of any Fourth Amendment violation by Officer Hardesty.  Accordingly, the plaintiff has

11

failed to present evidence of a constitutional violation by any of the individual officers, who are therefore entitled to qualified immunity.

In addition, the court will grant summary judgment in favor of the defendant Hardesty on the plaintiff's state law battery claim. No battery exists under Kansas law if the officer accused of using excessive force acted with the subjective and objective belief that force was reasonably necessary. *Wilson v. Meeks*, 98 F.3d 1247, 1253 (10th Cir. 1996). The evidence supports dismissal of the battery claim. As noted above, the officers possessed a reasonable basis for believing that a life-threatening situation existed, and used no more force than reasonably necessary to promptly end the situation. Further, the plaintiff has supplied no admissible evidence which would controvert the testimony of the officers that they were in fact subjectively seeking to expeditiously resolve the dangerous situation.

The court will also grant summary judgment in favor of the City of Wichita. As noted earlier, the plaintiff fails to directly controvert any of the facts presented by the City in its brief in support of the motion for summary judgment. The separate fact narrative in the response focuses on the actions of the officers on the night of the incident. Also as noted earlier, the plaintiff has not obtained the testimony of any expert witness to testify to an alleged deficiency in the City's training program. The uncontradicted testimony supplied by the City is that its officers do receive training in identifying persons suffering from a diabetic reaction.

Even assuming that plaintiff had presented a colorable claim of excessive force against the officer, which she has not, the City is in any event entitled to summary judgment. The plaintiff's claims against the City must be dismissed, first, because the plaintiff has supplied none of the essential factual and expert testimony necessary for a reasonable fact finder to conclude the training program of the City is inadequate. *Brown v. Gray*, 227 F.3d 1278, 1286-87 (10th Cir. 2000). The adequacy of police training techniques is a complicated subject and expert testimony on the subject is vital. *See Newell v. City of Salina*, 276 F. Supp. 2d 1148, 1158 (D. Kan 2003). Second, because the plaintiff has failed to show that additional or different training would have prevented plaintiff's

injuries.  And third, because the plaintiff has supplied no evidence from which the court could conclude that traffic stops of drivers suffering from diabetic reaction are sufficiently numerous that the City would have had notice that its training program was inadequate.  *See Hirsch v. Burke*, 40 F.3d 900 (7th Cir. 1994) (no municipal liability for mistaken arrest for intoxication of person in diabetic shock where there was no showing that the defendant city had notice of any prior similar incidents).

IT IS ACCORDINGLY ORDERED this 25th day of July, 2007, that the defendants' Motions for Summary Judgment (Dkt. Nos. 26, 28) are hereby granted.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE